IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. TIMOTHY JAMES COLLINS, Plaintiff, -v- 2H&V CONSTRUCTION SERVICES, LLC and GULF PACIFIC CONTRACTING, LLC, Defendants. | INDEX NO.: 3:24CV137-MCR-HTC<br>DEMAND FOR JURY TRIAL<br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(B)(2)<br>DO NOT ENTER ON PACER |

## ***QUI TAM* COMPLAINT**

Plaintiff-Relator Timothy James Collins ("Collins" or "Relator"), on behalf of himself and the United States of America ("United States" or "Government"), alleges and claims against defendants 2H&V Construction Services, LLC ("2H&V") and Gulf Pacific Contracting, LLC, ("GPC"), (collectively, "Defendants"), as follows:

## I. INTRODUCTION

1. This is a *qui tam* action brought against Defendants under the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA" or "Act"), to recover damages and statutory civil penalties on behalf of the United States.

2. In addition to damages and statutory civil penalties, Collins also seeks to recover on his own behalf the maximum relator's share and attorneys' fees, expenses, costs, prejudgment interest, and other relief expressly available under the

FILED USDC FLND PN
APR 1 '24 AM10:50

FCA and this Court's discretion.

3. The FCA *qui tam* allegations in this complaint arise from Defendants' misconduct and practices concerning their unlawful collusion to obtain federal contracts from the U.S. Department of Veteran Affairs ("VA"), U.S. Department of the Air Force ("Air Force"), U.S. Department of the Army ("Army"), U.S. Department of the Navy ("Navy"), U.S. National Park Service ("Parks"), U.S. Bureau of Reclamation ("Reclamation"), U.S. Coast Guard ("Coast Guard"), U.S. Agricultural Research Service ("Agriculture") (collectively, the "Contracting Agencies") that were set-aside by the U.S. Small Business Administration ("SBA") and VA for eligible persons and entities under the SBA's Service Disabled Veteran Owned Small Business ("SDVOSB") program.

4. More specifically, 2H&V, a registered SDVOSB, and its principal owner, Gregory Alan Scott ("Scott"), a service disabled veteran, falsely applied for SDVOSB set aside contracts that, in fact, were for the benefit of GPC, a non-SDVOSB company, Jason Michael Howell, Sr. ("J. Howell"), a Managing Member of GPC, and his father, Michael Love Howell ("M. Howell"), who is also a Managing Member of 2H&V, and M. Howell's brother Tim Howell ("T. Howell"), who is an employee of GPC.

5. The conduct described above, and alleged elsewhere in this complaint, violated 31 U.S.C. §§ 3729(a)(1)(A), (B) and (C).

6. As a result of Defendants' fraudulent conduct, the United States suffered substantial economic losses and is entitled to three times the total amount of all tainted contracts awarded to 2H&V, plus maximum statutory civil penalties, the precise amount of which damages and penalties will be determined at trial.

7. Additionally, Collins is entitled to maximum relator's share, reasonable attorneys' fees, costs and expenses and other equitable relief.

## II. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over the FCA *qui tam* claims alleged in this complaint under 28 U.S.C. § 1331 (federal question) and 31 U.S.C. § 3732(a) (False Claims Act).

9. This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this district and because acts proscribed by 31 U.S.C. § 1391 occurred within this district. Section 3732(a) of the FCA further provides for service of process at any place within or outside the United States.

10. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants can be found, reside, and transact business in this district; acts proscribed by 31 U.S.C. § 3729 occurred within this district; and a substantial part of the events or omissions giving rise to the *qui tam* claims alleged in this complaint occurred in this district.

## III. FCA JURISDICTION

11. Relator brings this *qui tam* action pursuant to 31 U.S.C. § 3730(b).

12. Upon information and belief, none of the subject matter or other jurisdictional bars, preclusions, restrictions, or limitations set forth in Section 3730 of the FCA is applicable to this action.

13. Upon information and belief, no person other than the Government has brought a related action based on the facts underlying this complaint. 31 U.S.C. § 3730(b)(5).

14. This action is not brought by a former or present member of the armed forces under 31 U.S.C. § 3730(b) against a member of the armed forces arising out of such person's service in the armed forces. 31 U.S.C. § 3730(e)(1).

15. This action is not brought against a Member of Congress, a member of the judiciary, or a senior executive branch official. 31 U.S.C. § 3730(e)(2).

16. Upon information and belief, this action is not based on allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party. 31 U.S.C. § 3730(e)(3).

17. Upon information and belief, none of the allegations or transactions as alleged in this action or claim were publicly disclosed via the following channels: (i) in a Federal criminal, civil, or administrative hearing in which the Government

or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media. 31 U.S.C. § 3730(e)(4)(A).

18. Upon information and belief, prior to any "public disclosure" (as defined by the FCA), Relator voluntarily disclosed to the United States Attorney's Office for the Northern District of Florida the information on which the allegations or transactions in this complaint are based.

19. Relator is an "original source" of the information on which his allegations are based, within the meaning of the FCA.

20. Prior to filing this action, Relator voluntarily disclosed to the United States Attorney's Office for the Northern District of Florida the information on which the allegations or transactions in this complaint are based.

## IV. PARTIES, ENTITIES AND PERSONS

### A. Relator

21. Relator Collins, a resident of Gulf Breeze, Florida, is a service disabled veteran and the president and owner of The Controls Company, LLC ("TCC"), a Florida limited liability company and SDVOSB located at 1018 Magnolia Lane, Gulf Breeze, Florida 32563. TCC is a low voltage heating and air conditioning ("HVAC") Direct Digital Control ("DDC") controls electrical installer and integrator serving the Guld Coast from Panama City, Florida to Mobile, Alabama.

TCC is a business competitor of 2H&V and GPC. By SBA Order No. VSBC-326-P, decided December 22, 2023, Collins successfully protested the award of an Air Force SDVOSB set aside contract to 2H&V on the grounds that 2H&V was functioning as a "shell company" for GPC in order to wrongfully obtain the SDVOSB contract.

**B. The United States**

22. The United States, acting through the SBA, VA and other Contracting Agencies, is the real party-plaintiff in interest in this action.

**C. Defendants**

23. Defendant 2H&V is a Florida limited liability company, with an office located at 811 S. Depot Street, Bonifay, Florida 32425. It uses the mailing address of P.O. Box 1301, Bonifay, Florida 32425. As alleged above, 2H&V is a registered SDVOSB that competes with TCC for set aside contracts to install and integrate HVAC/DCC controls. Purportedly, 2H&V is 51% owned by Scott and 49% owned by M. Howell.

24. Scott is merely a figure head of 2H&V, and his status as a service disabled veteran is being misused by Defendants to obtain SDVOSB contracts that are performed by, and for the benefit of, GPC. Scott resides at 5004 Thomas Drive, Unit 512, Panama City, Florida 32408, which is approximately 60 miles (or approximately one hour and ten minutes' drive) away from 2H&V's office address

in Bonifay. Scott's mailing address is 653 W. 23rd Street, PMB 171, Panama City, Florida 32405. Moreover, Scott is a full-time, registered investment adviser, Senior Vice President, currently employed by BancorpSouth Wealth Management/Bank of America, N.A., at its offices located in Panama City, Florida. Beginning in or about 2002, Scott was previously employed in the same or similar capacities with Merrill Lynch, Pierce, Fenner & Smith Incorporated, Summit Bank, Infinex Investments, Inc., Raymond James Financial Services Advisors, Inc., and Morgan Keegan & Company, Inc., in their respective Panama City offices. On his Investment Adviser Public Disclosure ("IAPD") Report, which is based on information filed with the Investment Adviser Registration Depository ("IARD") and FINRA's Central Registration Depository ("CRD"), Scott is purportedly an owner-partner of 2H&V and "devoted … 20 hour(s) Monthly to 2H&V, none of which devoted hours occurred during "trading hours." Scott's IADP further states that he began his relationship with 2H&V on 2/1/2007 and that his duties involve "Construction." Scott's IAPD also states that he spends two hours per month and one hour per week devoting time to overseeing passive investments in C. A. & G. I. Holdings, LLC and Jaypar, LLC/Armway, LLC, respectively.

25. M. Howell is neither a veteran nor a service disabled veteran. He is 2H&V's true operator and decision-maker. Additionally, M. Howell owns and resides at the property in Bonifay, Florida where 2H&V's purported office is located.

M. Howell's mailing address is P.O. Box 1301, Bonifay, Florida 32425. Further, as alleged above, M. Howell is the father of GPC's Managing Member, J. Howell.

26. Defendant GPC is a Florida limited liability company, with an office located at 750 Sand Path Rd, Bonifay, Florida 32425 and uses the mailing address of P.O. Box 381, Bonifay Florida 32425. Purportedly, GPC is 100% owned by J. Howell, who also resides at the same address where GPC has its office. As alleged above, J. Howell is the son of 2H&V Managing Member M. Howell. Additionally, J. Howell's uncle (M. Howell's brother), T. Howell works for GPC.

## V. LIABILITY, DAMAGES, AND AWARDS UNDER THE FCA

27. The FCA imposes civil liability on "any person" who, among other things:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (C) conspires to commit a violation of subparagraph (A) [or] (B).

31 U.S.C. §§ 3729(a)(1)(A), (B) and (C).

28. Section 3729(b)(1) of the Act defines the terms "knowing" and "knowingly" to

> (A) mean that a person, with respect to information—
>
> (i) has actual knowledge of the information;

(ii) acts in deliberate ignorance of the truth or falsity of the information; or

(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

29. Section 3729(b)(2) of the Act defines "claim" to mean any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded, or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A) (as amended May 20, 2009; the prior version is materially identical for purposes of this action).

30. Section 3729(b)(4) of the Act defines the term "material" to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

31. Section 3729(a) of the Act provides that any person who knowingly violates the FCA is liable to the United States for a civil penalty of not less than

$5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461, Public Law 104-410), which currently sets the minimum penalty at $13,946 and the maximum penalty at $27,894, plus three times the amount of damages the Government sustains because of an act of that person.

32. Section 3730(d) of the Act provides that where the Government intervenes in and proceeds with an action commenced by the filing of a *qui tam* complaint pursuant to 31 U.S.C. § 3730(b), and recovers money or property from a defendant under Section 3729, the person who initiated the action (known as the "relator"), shall receive between fifteen percent (15%) and twenty-five percent (25%) of the proceeds, subject to certain exceptions and limitations, none of which applies here.

33. Where the Government does not intervene in the *qui tam* action and the relator pursues it without the Government's involvement and recovers proceeds from a defendant under Section 3729, the relator, again, subject to certain exceptions and limitations that do not apply here, shall receive between twenty-five percent (25%) and thirty percent (30 %) of the proceeds. 31 U.S.C. § 3730(b).

34. Whether the Government intervenes in the matter or not, the relator in a successful *qui tam* action is also entitled to an award against the defendant for the amount of all reasonable expenses, attorneys' fees, and costs incurred in pursuing the

*qui tam* claims. *Id.*

## VI. FCA'S STATUTE OF LIMITATIONS

35. A *qui tam* claim under section 3730(b) of the FCA may not be brought (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b).

## VII. FCA'S SCIENTER STANDARD

36. Relator may establish scienter under the FCA by showing that Defendants: (1) actually knew their claims contained false or fraudulent representations, (2) were aware of a substantial risk that such claims were false or fraudulent and intentionally avoided learning whether they were true, complete and accurate; or (3) were aware of a substantial and unjustifiable risk that their claims were not true, complete and accurate but submitted them anyway. *See* 31 U.S.C. § 3729(b)(1)(A).

## VIII. FCA'S MATERIALITY STANDARD

37. Materiality under the FCA is a holistic, totality-of-the-circumstances inquiry. It turns on a variety of factors such as: (1) whether the government has expressly designated the legal requirement at issue as a "condition of payment"; (2)

whether the alleged violation is "minor or insubstantial" or instead goes to the "essence of the bargain" between the contractor and the government; and (3) whether the government made continued payments, or does so in the "mine run of cases," despite "actual knowledge" of the violation. *See* 31 U.S.C. § 3729(b)(4).

## IX. **THE SDVOSB PROGRAM**

38. The Veterans Entrepreneurship and Small Business Development Act of 1999 was established to facilitate an annual government-wide call of not less than 3 % of the total value of all prime contract and sub-contract awards for participation by small business concerns owned and controlled by service disabled veterans.

39. On December 16, 2003, the Veterans Benefits Act of 2003 was passed by Congress. Section 308 of the Act established a procurement program for SDVOSB. This procurement program provides that all federal contracting officers may restrict competition to SDVOSBs and award a sole source or set-aside contract where certain criteria are met.

40. The SBA issued an interim final rule, establishing the SDVOSB Program. This program establishes the criteria to be used, in federal contracting to determine service-disabled veteran status; business ownership and control requirements; guidelines for establishing sole source and set-aside procurement opportunities; and protesting appeal procedures for SDVOSB procurement.

41. To be eligible for a set-aside contract under the SDVOSB Program, the

soliciting company must meet the following criteria:

(a) The service disabled veteran ("SDV") must have a service connected disability that has been determined by the VA or U.S. Department of Defense ("DOD");

(b) The SDVOSB must be small under the North American Industry Classification System code assigned to the procurement;

( c) The SDV must unconditionally own fifty-one percent of the SDVOSB;

(d) The SDV must control the management and daily operation of the SDVOSB (which means that the SDV must be in charge of "both the long-term decision-making and the day-to-day operations"); and

(e) The SDV must hold the highest officer position in the SDVOSB.

See 13 C.F.R. §§ 128.202 and 128.203.

42. 13 C.F.R. § 128.203(i) provides that the SDV upon whom a concern relies for its SDVOSB status "may not engage in outside employment that prevent[s] the qualifying veteran from devoting the time and attention to the concern necessary to control its management and daily business operations."

43. Normally, the SDV "must devote full-time during the business's normal hours of operations." *Id.*

44. Moreover, "[w]here a qualifying veteran claiming to control a business concern devotes fewer hours to the business than its normal hours of operation, SBA

will assume that the qualifying veteran does not control the concern, unless the concern demonstrates that the qualifying veteran has ultimate managerial and supervisory control over both the long-term decision making and day-to-day management of the business." *Id.*

## X. FALSE CLAIMS ACT VIOLATIONS

45. A person employed by SBA or Contracting Agencies is "an officer or employee of the United States Government" within the meaning of the FCA.

46. A solicitor/contractor's submission of an offer proposal in response to a Request for Proposal ("RFP") for an SDVOSB set-aside contract, and its subsequent submission of an invoice for payment, to a Contracting Agency were "presented" to an officer or employee of the United States Government within the meaning of the FCA.

47. A solicitor/contractor's request for payment under an SDVOSB set-aside contract was "a claim for payment or approval" within the meaning of the FCA.

48. Any record or statement, including the submission of a company to the VA's Center for Verification and Evaluation ("CVE") seeking SDVOSB eligibility status and an offer proposal in response to a Contracting Agency's RFP that a solicitor/contractor or other person made, used or caused to be made or used in order to get a paid by a Contracting Agency for services performed under an SDVOSB set-aside contract, was a "record or statement" within the meaning of the FCA.

49. It was a violation of the FCA to "knowingly" (as defined in the FCA) present, or cause to be presented to a Contracting Agency a claim for payment under an SDVOSB set-aside contract where the awardee was not an eligible SDVOSB because its associated SDV did not control the management and daily operation of the SDVOSB.

50. It was a violation of the FCA to knowingly make, use, or cause to be made or used, record or statement in connection with an application to the SBA or VA CVE seeking SDVOSB status that was materially false because the associated SDV did not control the management and daily operation of the SDVOSB.

51. It was a violation of the FCA to knowingly make, use, or cause to be made or used, record or statement in connection with an offer in response to an RFP from a Contracting Agency for an SDVOSB set-aside contract that was materially false because the associated SDV did not control the management and daily operation of the SDVOSB.

52. It was a violation of the FCA to conspire to get paid by a Contracting Agency for services provided under an SDVOSB set-aside contract where the awardee was not an eligible SDVOSB because its associated SDV did not control the management and daily operation of the SDVOSB.

## XI. SPECIFIC FACTUAL ALLEGATIONS

53. Upon information and belief, Defendant 2H&V applied to the SBA or

VA CVE for granted SDVOSB status and its application for verification was granted.

54. 2H&V was assisted in obtaining SDVOSB status by Zielke Law Firm, PLLC, of Louisville, Kentucky, the same law firm that represented Defendant GPC in Relator's successful award protest before the SBA.

55. From between approximately 2008 to the filing of this complaint, 2H&V applied for, and was awarded and received payments from, approximately 205 SDVOSB set-aside contracts issued by the various Contracting Agencies, totalling approximately $50 million (the "Tainted Contracts").

56. Upon information and belief, Defendant GPC was a subcontractor for many of the Tainted Contracts.

57. At all relevant times, Scott was employed full-time in the financial securities industry, working from offices located in Panama City, Florida.

58. At all relevant times, 2H&V's sole office was located in a premises owned by M. Howell in Bonifay, Florida.

59. At all relevant times, Scott lacked the qualifications and license required to perform any electrical services called for under the Tainted Contracts.

60. Upon information and belief, Defendant 2H&V had few or no employees other than Scott and M. Howell and no trucks, tools or equipment needed to perform the services called for under the Tainted Contracts.

61. At all relevant times, M. Howell controlled the management and daily operations of 2H&V.

62. At various times relevant to this complaint, M. Howell represented to the Contracting Agencies that he was an employee or representative of Defendant GPC, as well as 2H&V.

63. At all relevant times, employees and representatives Defendant GPC performed the services called for under the Tainted Contract.

64. At all relevant times, Defendant GPC's tools, trucks and equipment were used to perform the services called for under the Tainted Contract.

65. At various times relevant to this complaint, employees or representatives of Defendant GPC represented to the Contracting Agencies via on-site sign-in sheets that they were performing the services called for by the Tainted Contracts.

66. All relevant times, Scott, M. Howell, J. Howell and T. Howell shared the proceeds from the Tainted Contracts.

## CLAIMS FOR RELIEF

### COUNT 1
### (As To All Defendants)
### Violation of 31 U.S.C. § 3729(a)(1)(A) (False or Fraudulent Claims)

67. Relator realleges and incorporates all allegations in this complaint as though fully set forth herein.

68. The FCA imposes liability on any person who, among other things, knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

69. Through the acts described above, and otherwise, Defendants, by and through their employees, agents, and representatives, acting with actual knowledge, deliberate ignorance and reckless disregard for the truth, presented, or caused to be presented to the Contracting Agencies false and fraudulent claims for payment and approval, namely, invoices for payments under Tainted Contracts, all in violation of 31 U.S.C. § 3729(a)(1)(A).

70. Upon information and belief, the United States was not aware of the above-described false and fraudulent claims and would not have paid Defendants if the United States had known the truth about these claims.

71. As a result of the foregoing activities, the United States suffered economic damages.

**COUNT 2**
**(As To All Defendants)**
**Violation of 31 U.S.C. § 3729(a)(1)(B) (False Records or Statements)**

72. Relator realleges and incorporates all allegations in this complaint as though fully set forth herein.

73. The FCA imposes liability on any person who, among other things, knowingly makes, uses, or causes to be made or used a false record or statement

material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

74. Through the acts described above and otherwise, Defendants, by and through their employees, agents, and representatives, acting with actual knowledge, deliberate ignorance and reckless disregard for the truth, used or caused to be made or used false records or statements material to false or fraudulent claims (see Claim 1, *supra*), namely an application seeking SDVOSB status for 2H&V and offers in response to Contracting Agencies' RFPs for the Tainted Contracts, all in violation of 31 U.S.C. § 3729(a)(1)(B).

75. Upon information and belief, the United States was not aware of the above-described false records and statements and would not have paid Defendants on the corresponding claims if the United States had known the truth about these records and statements.

76. As a result of the foregoing activities, the United States suffered economic damages.

**COUNT 3**
**(As To All Defendants)**
**Violation of 31 U.S.C. § 3729(a)(1)(C) (Conspiracy)**

77. Relator realleges and incorporates all allegations in this complaint as though fully set forth herein.

78. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729 et seq., as amended.

79. Through the acts described above and otherwise, Defendants entered into an unlawful agreement among themselves, and with others, to defraud the United States by making false certifications on SDVOSB set-aside contract applications filed with the Contracting Agencies and to be awarded to 2H&V. Defendants took substantial steps in furtherance of this unlawful agreement by, among other things, submitting claims for payment, an application for SDVOSB status for 2H&V and offers in responses to the Contracting Agencies' RFPs, all in violation of 31 U.S.C. § 3729(a)(1)(C).

80. Upon information and belief, the United States was unaware of Defendants' unlawful conspiracy and fraudulent conduct when it awarded the Tainted Contracts to 2H&V and paid it millions of dollars for construction services.

81. Upon further information and belief, the United States would not have awarded Tainted Contracts to 2H&V and paid is millions of dollars for construction services if it knew of the misconduct alleged in this complaint.

82. As a result of Defendants' conspiracy and the acts taken in furtherance of it, the United States has suffered economic and other damages.

## PRAYER FOR RELIEF

WHEREFORE, pursuant to 31 U.S.C. § 3730(b), acting on behalf of, and in the name of, the United States and on his own behalf, Relator demands and

prays that judgment be entered in favor of the United States and Relators and against Defendants as follows:

**As to COUNTS 1, 2 and 3**

A. On behalf of the United States:

1. Treble the amount of the tainted contracts awarded to 2H&V, plus the maximum statutory penalties for each false claim or false statement;

2. The costs of this civil action; and

3. Prejudgment interest.

B. And further, on behalf of Relator:

1. 25 percent (25%) of any recovery by the United States if it intervenes in and conducts this action, or 30 percent (30%) of any recovery by the United States if it does not intervene;

2. An amount for reasonable expenses necessarily incurred by Relator in prosecution of these claims and all reasonable attorneys' fees, expenses, and costs incurred by Relator in pursuing these claims; and

3. Such other and further relief to which this Court determines Relator is entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Relator demands that this case be tried before a jury.

Dated: March 26, 2024

Respectfully submitted,

McINNIS LAW

By: /s/ Timothy J. McInnis
Timothy J. McInnis, Esq. [7151]
NYS Bar No. 2205086
Pro Hac Vice [application pending]
521 Fifth Avenue 17th Floor
New York, NY 10175-0038
(212) 292-4573
tmcinnis@mcinnis-law.com

*Attorneys for Relator*

Timothy McInnis
McInnis Law
521 5th Avenue
NY, NY 10175

Retail

UNITED STATES POSTAL SERVICE

32502

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
JACKSON HEIGHTS
NY 11372
MAR 26, 2024
$7.71
R2305M144829-5

FIRST CLASS MAIL

CERTIFIED MAIL®
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

9589 0710 5270 0574 7370 71

APR 01 2024

CLERK OF COURT
USDC, N.D. FL
ONE NORTH PALOFAX St.
PENSACOLA, FL 32502